IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW POYNER,

                  Plaintiff,

v.                                                         OPINION and ORDER

WENDY DEMLER, TARA ANDERSON,                      22-cv-199-jdp
and SANDRA ENDERS,

                  Defendants.

---

Plaintiff Matthew Poyner, proceeding without counsel, is a prisoner at Wisconsin Secure Program Facility. The events giving rise to this case occurred in 2021, while he was incarcerated at Jackson Correctional Institution. There are two sets of defendants: Wendy Demler, a contracted nurse practitioner who worked at the prison, and Tara Anderson and Sandra Enders, Department of Corrections nurses. I granted Poyner leave to proceed on Eighth Amendment claims that defendants failed to change Poyner's pain treatment after it proved ineffective.

Both sets of defendants have filed motions for summary judgment. Dkt. 36 and Dkt. 41. I conclude that the undisputed facts show that defendants did not disregard Poyner's pain, so I will grant summary judgment to defendants and dismiss the case.

UNDISPUTED FACTS

Poyner did not file a response to defendants' motion for summary judgment, even after I granted him an extension of time to do so. Dkt 52. But Poyner's complaint is verified, meaning that I can treat it as the equivalent of an affidavit for the purposes of summary judgment. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). I will consider the defendants'

proposed findings of fact undisputed except where they differ from Poyner's account of the facts in his complaint.

At all times relevant, plaintiff Matthew Poyner was a prisoner at Jackson Correctional Institution. Defendant Wendy Demler was a licensed nurse practitioner and advanced practice nurse prescriber subcontracted to the prison, who acted as Poyner's primary care provider. Defendants Tara Anderson and Sandra Enders were Department of Corrections nurses who worked at the prison.

Poyner began experiencing severe abdominal pain in August 2021. Demler assessed him and prescribed Miralax and Lactaid pills, thinking he might be suffering from constipation and lactose intolerance. A few days later Poyner reported an increase in his pain and Enders, the on-call nurse, sent him to the local emergency room for evaluation. A CT scan showed a possible bowel obstruction, which resolved by the next morning, and constipation. Poyner was discharged with instructions to take Miralax daily. Anderson conducted a return visit when Poyner returned from the ER and reiterated the hospital's instructions to take Miralax.

A few days later, Demler saw Poyner for a follow-up visit and prescribed him Tylenol for continued abdominal pain. Poyner reported pain again a few days later and the on-call nurse sent him to the emergency room for a second time. Hospital staff conducted a full work-up and another CT scan but found no abnormalities other than a small periumbilical hernia. Demler saw Poyner for a follow-up after his second hospital visit and explained to him that his results were normal. She ordered additional labs to search for the cause of his pain.

Poyner's abdominal pain continued. On September 4, he submitted a Health Services request saying that he had taken laxatives for two weeks but continued to have pain. He believed that constipation was not the underlying issue and requested referral for a

colonoscopy. Two days later, security called Anderson, who was on-call, to tell her that Poyner had complained of abdominal pain and had vomited four times. Anderson instructed him to sip fluids and rest and that he would be seen the next day, but to call the on-call nurse again if vomiting worsened.

The next day, Anderson saw Poyner for a sick call visit and he told her that nothing was making his symptoms better. Anderson reviewed Poyner's current labs and noted that some of them were incomplete. Anderson could not order labs or refer Poyner to specialists, so she referred him back to Demler. Demler saw Poyner the next day and decided to refer him to a gastroenterologist because none of his providers had yet been able to determine the cause of his pain. She submitted an off-site service request for a gastroenterology appointment and specified that Poyner should be put at the "top of the list" if possible. Dkt. 38-1, at 60. She prescribed Poyner Levsin and Zofran to manage his pain and vomiting.

Poyner had to wait more than two months for his follow-up with gastroenterology, during which time defendants continued to manage his symptoms. Demler gave him magnesium citrate for pain and constipation twice in September. In early October, Enders evaluated him after receiving a call from security. He reported that he was frustrated with not finding a source of his pain but that he would "try to wait it out for now." Dkt. 44-1, at 5. In early November, Anderson saw Poyner for pain and constipation, noted a "great deal of facial grimacing," and treated him again with magnesium citrate. On November 22, Enders responded to another call from security that Poyner was in pain; this time, she determined that his condition might be emergent and referred him to the emergency room. At the emergency room, Poyner again received labs and a CT scan, and the treating physician wrote: "I am unsure

of the exact etiology of his symptoms however it does not appear to be appendicitis, pancreatitis, AAA, or other emergent etiology." Dkt. 38-1, at 76.

On November 23, Poyner had his gastroenterology appointment with Dr. Steven Schlack-Haerer at Gundersen Health. Schlack-Haerer recommended that Poyner receive a colonoscopy and Miralax, and that he take tramadol, an opioid pain medicine, every eight hours. Dkt. 38-1, at 83. However, Demler declined to provide tramadol, filling out a change of consultant form explaining her reasoning: "Tramadol not ordered. Last CT showed stool burden. Patient has constipation. Tramadol has side effect of causing constipation. Patient already taking gabapentin, MiraLAX, Tylenol, Levsin, omeprazole, Zofran." Dkt. 38-1, at 85. Poyner asserts that Demler's rationale for not providing tramadol was false, because the other medicines she provided him, including Tylenol, Levsin, and Zofran, also listed constipation as a potential side effect. Dkt. 1, ¶ 37.

ANALYSIS

I granted Poyner leave to proceed on Eighth Amendment claims that Demler, Anderson, and Enders failed to change his pain treatment when it had proven ineffective, and that Demler ignored a specialist's recommendation that he receive tramadol for his pain.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The parties agree that Poyner's severe abdominal pain was a serious medical need, so the question is whether defendants consciously disregarded his pain. Conscious disregard of a prisoner's serious medical need involves intentional or reckless conduct, not mere negligence. *Berry v.*

4

*Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Even gross negligence is not enough to establish conscious disregard. *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

Defendants in this case did not ignore Poyner's abdominal pain or refuse him care. Over the course of several months, they repeatedly monitored him, administered treatment for his pain and constipation, and referred him to the emergency department and to a gastroenterology specialist. The receipt of some medical care does not automatically defeat a claim for constitutionally inadequate care, but Poyner would have to show that the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (quoting *Snipes*, 95 F.3d 586 at 592). Two circumstances in which a jury can infer conscious disregard is if a provider "persists in a course of treatment known to be ineffective" or a provider's decision is "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016).

No reasonable juror could find that Demler, Anderson, or Enders consciously disregarded Poyner's pain. As nurses, Anderson's and Enders's job was to triage prisoner complaints, examine prisoners at sick call visits, refer them to advanced care providers or to the emergency room if needed, and provide, on a short-term basis, certain medicines like constipation-relieving substances, anti-acids, or over-the-counter pain medicines. Dkt. 43, ¶¶ 5, 12–13, 16–19. They could not prescribe medications, override the decisions of advanced care providers, or request visits with specialists. Dkt. 43, ¶¶ 21–22. Within this framework, Anderson and Enders tried a variety of treatments to address Poyner's pain. Each time Poyner complained of abdominal pain, Anderson and Enders triaged his complaints and suggested

5

solutions to make him more comfortable, such as rest, fluids, over-the-counter pain medicines, and constipation treatments. They repeatedly referred him to Demler, the advanced care provider, so that his condition could be better addressed. When his pain levels were highest or there were other indicators that he might be suffering from an emergency condition, they sent him to the emergency room. No jury could find that Anderson and Enders ignored Poyner's pain or deviated so substantially from accepted medical standards that their treatment could form the basis for an Eighth Amendment violation.

The same is true for Demler. As an advanced care provider, Demler could prescribe medications and refer prisoners to outside specialists. She did both these things to diagnose and treat Poyner's pain. She initially prescribed Miralax and Lactaid for suspected constipation and lactose intolerance. When Poyner continued to experience pain, she prescribed Tylenol. After Poyner reported that the laxatives had been unsuccessful and that he was experiencing vomiting, she prescribed Levsin and Zofran, which are used to treat stomach conditions and vomiting. And on September 8, after initial treatments had been unsuccessful, Demler submitted a referral for Poyner to see a gastroenterologist, noting in the request that Poyner should be put at the "top of the list" if possible. Dkt. 38-1, at 60. Poyner did not actually see a gastroenterologist until November, but that delay was not due to any failure by Demler. No jury could find from these facts that Demler ignored Poyner's pain or "persist[ed] in a course of treatment known to be ineffective." *Petties*, 836 F.3d at 730. The only reasonable inference is that Demler did not know the source of Poyner's pain but was taking measures within her professional judgment to diagnose and treat it.

Poyner's strongest potential claim is that Demler consciously disregarded his pain because she refused to provide him with tramadol as recommended by his gastroenterologist.

A provider's refusal to take instructions from a specialist is a "hint" that the provider's action might have been due to conscious disregard rather than honest professional judgment. *Petties*, 836 F.3d at 729. But if a medical provider gives a cogent medical explanation for her decision to deviate from a specialist's recommendation, the plaintiff cannot survive summary judgment without adducing evidence that would allow a reasonable jury to determine that the provider's explanation was false. *Zaya v. Sood*, 836 F.3d 800, 806 (7th Cir. 2016).

Poyner has not done so. Demler's reasoning for not giving Poyner tramadol was that she believed an opioid might worsen his constipation. This is a cogent medical explanation, and Poyner has not adduced evidence from which a reasonable jury could find that it was false. Poyner asserts in his complaint that Demler had prescribed him other medications, including Tylenol, Levsin, and Zofran, that listed constipation as a possible side effect. Dkt. 1, at 6, 8. But medications often list many side effects with varying likelihood and severity, so no reasonable jury could find that Demler's explanation was false from the mere fact that these other medicines might cause constipation.

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment, Dkt. 36 and Dkt. 41, are GRANTED.
2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered June 3, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

7